The first case today is 15-1303, United States v. Darlene Ford. Good morning, Your Honors. May I have two minutes for a bottle? Yes, good morning, Mr. Foley. Thank you very much. Your Honors, there is not a scintilla of evidence in this record that Darlene Ford knew that her husband was a convicted felon. And therefore, she could not be convicted of aiding and abetting a felon in possession of a firearm. The first trial was hung. In the second trial, at page 384, the district court said, there's a pretty strong argument the government has not proven that Darlene Ford knew. And the reason is obvious from the record. The government tries to build an inference on an inference about a variety of different issues. But none of them go to the issue of her knowledge. And part of the problem with arguing that Darlene Ford knew that her husband had a grow house, or even that she participated in that crime, has nothing to do with whether she knew his status as a convicted felon. We don't even get to whether she knew, unless we first agree with you, that having reason to know is not sufficient. Is that correct? No, it's not. Because the evidence in this case doesn't show she had reason to know. Not just that she didn't know, but that she didn't have reason to know. And the answer to that is very apparent. Because as we cite in the brief, there are studies that show one in five marriages have a secret that is so severe that if the other spouse found out, it would result in a divorce. How does one spouse keep from another the information that the spouse has been picked up, arrested, tried, convicted? How do you keep all that separate from your spouse when you're living together? And home lost. The Massachusetts home was lost. That's correct. But that doesn't prove that because the home was lost or forfeited, that Mrs. Ford knew that the reason was because he was convicted of a crime and was convicted as a felon. One of the things that the government argues is that Mrs. Ford had to know that Mr. Ford was on probation. And even that argument lacks all merit. Because there are defendants who receive an adjudication and contemplation of dismissal who are put on probation. Now you're getting to a slightly different issue. You're getting to whether she knew that the crime he was convicted for and put on probation was a felony. Correct. But wouldn't it be common sense to suggest that she knew he was convicted of some crime and was serious enough that he was preoccupied for a long time, that he was in court proceedings and that they lost their house as a result of it? Isn't it common sense that she who was living with him and continued to thereafter live with him knew that? Your Honor. And whether that's sufficient enough, then you argue it's not enough. No, it's not. And I'll tell you the reason why, Judge. Because common sense has nothing to do with proof beyond a reasonable doubt. It may be a small component that we ask juries to draw inferences and to use their common sense. But what the government has done in this case is basically say, we want you to think about common sense and building inferences on inferences, but it falls so far short of proof beyond a reasonable doubt that that's what is critical here. The government cites about five different facts in its brief that go to the issue, even the issue of moving to Maine to start over. That does not address Mrs. Ford's knowledge of whether her husband is a convicted felon. Suppose they were living together. The evidence is he was died, there was a memorial service, and he was buried. That's it, evidence. And then she continued to live there after on her own. Could a jury infer that she knew he was dead? Judge, of course. But it's so different. Well, how is this different in terms of the inevitable openness of the facts that would be visible to one's spouse, and you'd have the same common sense inference that she must have known he was dead, she must have known he got busted for some serious crime. The difference is so apparent, Judge. Dead is dead, and it's final, and everyone knows it. You go to a funeral. Spouses keep secrets from spouses. And there are felons who are ashamed of their felonious status, and they keep that from their spouse. And the government could never overcome that in this case, and that's why even the district court judge said that it's a strong argument. It's page 78 of the appendix 384 of the transcript. But doesn't that add a component of the loss of the house? I could agree with you about the secrecy between spouses sometimes, but this is a result that directly impacted her home. But, Your Honor, there is no rational connection between losing a home, even in a criminal proceeding, and that ipso facto proving felonious status. They are completely unrelated. Mrs. Ford is a lay person. Well, she indicated that she thought the loss of her home had something to do with her son's criminal activity. Correct. So if she knew that loss of property could be criminally related, then she has more information at her disposal. Information does not translate into knowledge of status of her husband being a convicted felon. But does it transfer to reasonable inference? Well, again, and this is what I spoke to Judge Kayada about, Judge Thompson. There is a difference between knowing about what happened in a criminal proceeding and knowing that someone is a convicted felon, even losing a house. There are lay people who may not understand why a house is forfeited to the government. They may not understand forfeiture law. This record is just asking too much of knowledge of a spouse. In the government's 28-J submission, even though the Manzo case, which this court decided January 20th, that case actually helps Mrs. Ford. It does not help the government. And the reason why is if you look at the facts of that case of active flight, here you have a defendant who was convicted of the same crime. But why was he convicted of that crime? Because when the police turned on their lights and he had two co-defendants in the car who had visible weapons, what did he do? He accelerated quickly. He tried to flee from the police. And can I just finish, please? Yes. And the reason that case is the opposite is because what Mrs. Ford did is not anywhere near the active flight in Manzo. May I quickly just address the sentence issue, Your Honor? Can I ask you this? Do you agree that the standard is that she knew or had reason to know, like the Third, Sixth, and Seventh Circuit? Do you think that's the standard? On the facts of this case, no. First of all, Do you think it's the applicable legal standard that should be applied, that she knew or had reason to know? In the context of a husband and wife, as opposed to a gun dealer, for example, I think that the jury charge here should have been that she knew. And the district court acknowledged that there was no case law in this circuit and they were flying under the radar. So you think applying the standard of had reason to know is somehow unfair?  In any set of circumstances? No. I'm taking down the unique facts of this case because of the relationship of the parties. But can I have just one minute on sentence, Your Honor? You have two minutes on rebuttal, but you can address it then. Okay, thank you very much. I'm sorry. I don't know if my colleagues have any other questions for you, but they'll ask you when you come back up. Okay, thank you. I'm Margaret McGoy for the United States. If I may begin with the jury instruction question, because in the government's view that really colors the sufficiency of the evidence issue. Judge Mastroianni, you are absolutely correct. There are three circuits that have held that the standard is knew or had reason to know. There is no circuit that has held that actual knowledge is required. The Ninth Circuit has held with some trepidation that no knowledge at all is required. And in the government's view, the majority view is not only the correct one, but the fair one. Possession of a firearm by a felon is a – excuse me? How does that square with our more recent Incarnacion case? I'm sorry? How does that square with our more recent U.S. versus Incarnacion case? Are you familiar with that? Judge Thompson, you've stumped me. Could I answer that in a 28-J letter? Yes. Because I am not familiar with that. How about Rosemond, the Supreme Court case? I think it squares completely with Rosemond. And that is because of the nature of the crime. If to hold a defendant to a standard of no knowledge at all runs the risk of having totally innocent people who simply transfer momentarily a gun to another person be criminally liable. To require actual knowledge is really requiring significantly more on the part of the aider and abetter than the principal is attributable to. To require new or had reason to know gives the jury two options. They can decide either that there was actual knowledge or that the circumstances were such that a reasonable person would have had knowledge. But you make a point which has some force that why require more knowledge than the actual principal had. And yet the principal is going to know automatically that they were convicted of a crime. Correct. And yet the aider and abetter may have no idea. And that's why the middle ground of new or had reason to know is the correct one. But that may – How do you – what do you mean by new or reason to have no? Are you positing that this is a situation where someone with a pure heart and pure mens rea but stupidity can be put behind bars because they loan a neighbor a gun? In fact, they just hand the neighbor the gun to look at. The reason to know is the emphasis point, Judge Cayota. And if I may address that in the context of this case because it does dovetail directly with the sufficiency of the evidence issue. First of all, there's a procedural bar that the defendant has not raised, which is that he did not renew his motion for judgment of acquittal at the close of the government's case. The second is his assumption that there was no actual knowledge on the part of the defendant. In the government's view, there is evidence from which the jury could have concluded that the defendant had actual knowledge. But that – he did object to the instruction, right? Correct. And so if that objection were correct, then unless you're rescued on harmless error, beyond reasonable doubt, it makes no difference that he did not move or that the jury could have found. Well, I disagree with you there, Judge Cayota. How could that be? If the court gave the wrong instruction, if he timely objected to that, and if the giving of the right instruction would not have resulted in an automatic government victory, why would that not be? Well, the two, first of all, as I'm sure you're well aware, are separate analyses. They have separate standards of review, both of them. And they do dovetail to the extent that the sufficiency of the evidence plays directly into the harmless error aspect of the jury instruction, assuming there is error. And perhaps I should just go straight for the harmless error because in the government's view, we do prevail on that. The issue here was simply did the defendant know or have reason to know that her husband was a felon. And let me go straight to the evidence from which a jury could have inferred that she had actual knowledge. First of all, she bought the gun. She signed the paper in which she certified that she was not a felon. So the jury could infer from that that she had knowledge of the significance of a felony. When she was arrested, she told the police, I purchased them. I had every right. I passed the next test. Counselor, you're still losing me because what difference does any of this make? It seems you're clearly right if the instruction was right. But if the instruction was wrong, what difference does this make, unless you're talking about overwhelming evidence? I am talking about overwhelming, and I'm also talking about the two different prongs of the charge, one of which is actual knowledge and the other of which is reason to know. And what I'm addressing right now, Judge Chiara, is the actual knowledge part of it. In the government's view, her statement to the police, I passed the next test and all of that, permitted the jury to know the significance of the next test. It's not a household word. How do we know the jury convicted on that prong? We don't know. But we are to view the evidence and the reasonable inferences in the light most favorable to the verdict and also to view the evidence in context in terms of if there was error, whether it was harmless beyond a reasonable doubt. And I am not hanging my hat exclusively on that statement, although there's one other statement by the defendant I would like to point out, and that was when she testified at trial, she said there is no law against a felon buying gun parts. The jury could put together from all of that that she knew exactly that her husband was a felon because she bought the gun, she passed the test, she was able to pass the test because she was not a felon, he was able to possess firearm parts because the law doesn't prohibit that on the part of the felon. But that's not all. The evidence and the reasonable inferences both are overwhelming for their own sake and also demonstrate harmless error beyond a reasonable doubt with respect to jury instruction. As Judge Thompson pointed out, these two people have been married together for 40 years. The Manso-Cepeda case recently decided suggests that the nature of the relationship is very significant on the issue of knowledge. This defendant had to have been aware of the illegality taking place in Massachusetts. There were two houses, one of which was deeded to her, the second of which she occupied with her husband. They reeked of marijuana when the police showed up. The second house, the one that was deeded to her, was forfeited. A reasonable jury could say that no matter how uninformed an individual, if you lose a house that's been deeded to you, you would at least ask the reason. And if asking the reason, she would find out it was because of her husband's felony conviction. There's no escaping that she had knowledge of the illegality in Maine, which was virtually identical to the illegality in Massachusetts that led to her husband's conviction. The architecture of the house was such that little tiny living quarters upstairs paled in comparison to the downstairs that was permeated with all kinds of cultivation equipment. She was the principal bookkeeper. She was the one who made the deposits, who kept the ledgers, that accounted for $588,000 worth of drug profits. The statements that I have just recounted, which she made to the police and before the jury, permitted the jury to infer that she had actual knowledge. And then another thing that permitted the jury to infer that was her pervasive lies about everything. She lied knowing that her husband was a felon. She lied knowing that anything illegal was taking place in Massachusetts. She lied knowing that there was anything taking place in Maine, in the house in which she lived. She testified that she only realized that there was a cultivation operation taking place in the basement when the police showed up to arrest her. And she claimed that her sons had nothing to do with it, even though they fled the house covered with marijuana debris. So in the government's view, not only does the sufficiency evidence allegation fail, but even if there was error in the jury instruction, which we claim there was not, that error was harmless beyond a reasonable doubt. Can you cite to us any precedent by the Supreme Court or our Court in which we found the giving of an improper instruction on the elements of the offense was harmless error because the jury could have inferred guilt under a correct instruction had a correct instruction been given? I'm at a loss to think of any precedent. With that particular point, Judge Cayetta, I am not aware, but I am aware of this circuit's precedent with respect to the reviewability of jury instructions as a whole. And the third prong of this Court's analysis is whether or not the incorrect jury instruction prejudiced the defense. And in the government's view, in light of the overwhelming evidence of her guilt, and in light of the evidence from which the jury could have inferred direct knowledge, under this Court's standard of review of jury instructions, it is not error and it is not reversible. So there are some courts out there, some circuits who apply, that had reason to know? The three circuits you cited. The three that I cited? Yes. All right. And there are circuits out there that don't have any knowledge requirement? The Ninth Circuit has held that they're, in one opinion, that no knowledge at all is required, on the theory that because no knowledge is required by the principle, no knowledge should be required by the aid of any better. That circuit, another panel has sort of questioned the validity of that, but that still remains the law in the Ninth Circuit. But there are three circuits that adhere to the new or had reason to know standard. None that requires actual knowledge. But doesn't going to the had reason to know lessen the government's burden? Well, if it lessens the government's burden and it's the right standard of review, then that's the law. And there is no law. Well, it might not be the right standard of review if it unfairly lessens the government's burden. Well, that's the first issue for you to decide, whether you go with the majority, which has no or had reason to know, whether you go with the Ninth Circuit, which requires no knowledge, or whether you buck both trends and impose an actual knowledge requirement where, in the government's view, there is no authority that supports that view. If the court has other questions, I'd be happy to address them. Otherwise, the government will urge the court to affirm. I'd like to jump to the question about the sentencing issue and the argument the defense makes regarding the increase in the guideline range for the perjury. Correct. I'm happy to address that. The defendant would have this court believe that the reason the court imposed the sentence it did was because the defendant went to trial. And that seizes one sentence out of the sentencing court's rationale, completely out of context. What galled the district court in this case was that the defendant lied. The court went through the standard for imposing the obstruction enhancement, said that you have to be very careful to make sure that it is knowing falsity and not failed memory or some other thing. And then the court ticked off all of the critical aspects of the defendant's testimony about which she lied. She lied that she didn't know her husband was a felon. She lied that she didn't know there was marijuana being cultivated in Massachusetts. She lied that she didn't know that there was marijuana being cultivated in Maine. She lied when she said the first time she learned about it was when the police arrived to arrest her. Do you think it was proper application of the guidelines by the sentencing judge? Absolutely. I do. Because the standard of review for the obstruction adjustment by itself is clear error, and the court has made very clear that that is generally a credibility determination from the finder of fact who has looked this woman in the face, watched her testify, and that unless this court is left with a clear and abiding sensation that a mistake has been made, that stands. Thank you. Does the court have other questions? Thank you. Thank you. Your Honor, in response to your last question about the sentence, if the court reads the sentence transcript, you will see the sentence was imposed based on an either or formulation. And what the judge said, after saying either, and then he said or, about following my sons and not my husband, I won't go to trial in this, you would have been looking at a much lower guideline range. So what the judge did basically was, on the one hand, he increased the sentence based on the perjury. On the other hand, he enhanced the sentence based on the defendant going to trial, even though this court was never offered a plea. I'm so confused about that argument. You don't need a plea in order to plead guilty. I understand. But what the judge was basically saying here was it's because you did not plead guilty that I am. But what's wrong with that? What's wrong with it is a judge should not punish a defendant for exercising her right to go to trial. Well, that's true, but the guidelines impose a reduction for acceptance of responsibility, whether you agree with it or not. Well, the way the judge structured the sentence, and I disagree with the government that we're misreading what the government said. The judge imposed a sentence based on two separate factors. But just getting away from this sentence for a minute, just to respond to a few of the government's points. What the government is basically saying is that because the defendant made false statements about marijuana, that that automatically means she knows her husband was a convicted felon. Those are two completely unrelated concepts. So I urge the court, when it looks at this record, to basically do what Judge Kayada said, that by upholding this type of conviction, you can have someone naively or foolishly or stupidly give a gun to a convicted felon, and they automatically have an eight or better liability, without looking at the facts to see, is there a crime that occurred? And by using a formulation that the judge did, in this case, reason to know, you do decrease the burden of proof. I see my time is up. Are there any other questions, Your Honor? Thank you very much, Your Honors.